UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIA ALICEA,<br>*Plaintiff*,<br><br>v.<br><br>SERGEANT SMITH #214,<br>*Defendant*. | No. 3:23-cv-528 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Maria Alicea ("Plaintiff"), proceeding *pro se*, has sued Sergeant Smith ("Defendant") under 42 U.S.C. § 1983 for an allegedly unconstitutional search and seizure in violation of her Fourth Amendment rights. Complaint at 3, ECF No. 1 (Apr. 25, 2023) ("Compl.").

Sergeant Smith has moved to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, under the doctrine of qualified immunity. Mot. to Dismiss, ECF No. 24 (Oct. 6, 2023) ("Mot."); Mem. of L. in Support of Mot. to Dismiss, ECF No. 24-1 (Oct. 6, 2023) ("Mem.").

For the following reasons, the motion to dismiss is **GRANTED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Factual Allegations**

Ms. Alicea is allegedly physically and mentally disabled. Compl. at 4. She allegedly also suffers from mental illness and trauma stemming from a prior interaction with Bridgeport police officers in 2020. *Id.* at 3–5. Ms. Alicea is allegedly "traumatized, injured, and liv[ing] a poor quality life due to police[.]" *Id.* at 5. Ms. Alicea allegedly moved to Rocky Hill, where she currently resides, from Bridgeport, in order to "avoid police and civil situations involving police." *Id.* at 7.

1

Ms. Alicea allegedly lives in a private, residential apartment complex in Rocky Hill called the Concierge (the "Concierge"). *Id.* at 2, 4. Concierge staff allegedly "us[e] police to manipulate, bully and intimidate residents in their private dwelling." *Id.* at 4. In April 2023, a Concierge manager named Amanda allegedly "use[d] police to intimidate [Ms. Alicea] and force entry" into her unit over a heating issue. *Id.* at 2; First Obj. to Mot. to Dismiss at 2, ECF No. 27 (Oct. 9, 2023) ("Pl. Opp'n"). During this incident, fearful that police officers and management staff would enter her apartment, Ms. Alicea allegedly left her home. Compl. at 2. After this incident, Ms. Alicea allegedly filed a police report with an officer from the Rocky Hill Police Department (RHPD), Sergeant Smith. *Id.* at 3, 7. While filing the police report, Ms. Smith allegedly told Sergeant Smith "in detail" about her traumatic interactions with Bridgeport police, her generalized fear of law enforcement, and her mental health struggles. *Id.* at 3–4.

The next day, a police SUV marked "RHPD #3" allegedly parked in Ms. Alicea's lawn area "at [her] back sliding doors" and "directly at [her] open windows." *Id.* The SUV allegedly had "black dark tints." *Id.* at 4. Sergeant Smith was allegedly inside the vehicle and showed a "lack of care in parking purposely creepily and stalkingly directly at my open door windows . . . caus[ing] me distress &outrage, fear." *Id.* Sergeant Smith allegedly parked outside Ms. Alicea's window, in order "to bully, intimidate & violate my peace, sanity & mock my mental health & liberty & civil rights as a public law abiding citizen[.]" *Id.* at 5.

This conduct allegedly violated Ms. Alicea's Fourth Amendment "right to live in privacy without [government] interference[.]" *Id.* at 4.

### B. Procedural History[1]

On April 25, 2023, Ms. Alicea filed the Complaint against Sergeant Smith, the Chief of

---

[1] The Court reviews only the procedural history relevant to this motion.

Police of the RHPD, and Governor Ned Lamont. Compl. On the same date, Ms. Alicea filed a motion for leave to proceed *in forma pauperis*. Mot. for Leave to Proceed in forma pauperis, ECF No. 3 (Apr. 25, 2023).

On April 26, 2023, District Judge Kari A. Dooley referred the case to Magistrate Judge Robert M. Spector for a recommended ruling on the motion for leave to proceed *in forma pauperis*. Order Referring Case, ECF No. 9 (Apr. 26, 2023).

On May 23, 2023, Judge Spector issued a recommended ruling granting the motion for leave to proceed *in forma pauperis* and dismissing several of Ms. Alicea's claims. Recommended Ruling, ECF No. 13 (May 23, 2023) ("Rec. Ruling"). More specifically, Judge Spector recommended that: (1) all claims against Governor Lamont and the RHPD Chief of Police be dismissed with prejudice; (2) Ms. Alicea's claims for "pursuit of happiness" under the Fourteenth Amendment be dismissed with prejudice; and (3) Ms. Alicea's Fourth Amendment claim against Sergeant Smith be allowed to proceed. *Id.*

On May 30, 2023, Ms. Alicea objected to the recommended ruling. Obj. to Rec. Ruling, ECF No. 13 (May 30, 2023).

On June 8, 2023, Judge Dooley granted Ms. Alicea's motion for leave to proceed *in forma pauperis* and adopted the recommended ruling in its entirety. Order, ECF No. 15 (June 8, 2023).

On October 6, 2023, Sergeant Smith filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Mot.; Mem.

On October 9, 2023, Ms. Alicea filed an objection to the motion to dismiss. First Obj. re Mot. to Dismiss, ECF No. 27 (Oct. 9, 2023).

On November 22, 2023, the case was transferred to this Court. Order of Transfer, ECF

No. 34 (Nov. 22, 2023).

On April 15, 2024, the Court held a motion on all pending motions in this case. Min. Entry, ECF No. 48 (Apr. 15, 2024).

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York*

*v. Ass'n of the Bar of the City of New York.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

Sergeant Smith has moved to dismiss Ms. Alicea's Fourth Amendment claim on three grounds. He argues that: (1) Ms. Alicea has failed to state a claim under § 1983 because she has failed to adequately allege personal involvement by Sergeant Smith; (2) Ms. Alicea has failed to state a claim under § 1983 because totality of the alleged conduct does not amount to an actionable constitutional violation; and (3) Sergeant Smith is entitled to qualified immunity. Mot. at 1.

Ms. Alicea responds in several ways. First, she argues that the incident in April 2023 involving Concierge staff and RHPD officers constituted a seizure because she was forced to leave her home due to fear that police officers would enter her apartment. Pl. Opp'n at 2. Ms. Alicea also argues that the subsequent incident, in which police "trespassed upon protected property" by entering Concierge property and parking outside her unit, constituted a search. *Id.*

Finally, Ms. Alicea argues that "there is no qualified immunity when State Actors cause any 1983 Deprivations." *Id.*

The Court will address each argument in turn.

Before engaging in this analysis, however, the Court will address a threshold legal consideration raised by Ms. Alicea during the motions hearing on April 15, 2024. *See* Min. Entry, ECF No. 48 (Apr. 15, 2024). Ms. Alicea stated several times that this matter should be heard by a jury, and that any other form of resolution would violate her right to trial by jury.

But the right to a jury trial, even where explicitly provided by statute, is not absolute. Rather, such a right is contingent on a litigant satisfying certain prerequisites. First, in order to bring a suit in federal court, a litigant must demonstrate standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("The doctrine [of standing] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."). Standing requires that: (1) that there exists a real case or controversy, and (2) the litigant is the right plaintiff to bring such case. *See id.* ("[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." (internal citation omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))). It is "settled" that the legislature "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 339 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima[.]").

Second, even where a litigant demonstrates standing, the right to a jury trial is contingent

on the existence of some contested factual issue for a jury to decide. *In re Big Apple Volkswagen, LLC*, No. 11-11388 (JLG), 2016 WL 1069303, at *8 (Bankr. S.D.N.Y. Mar. 17, 2016) ("The right to a jury trial is implicated only if the party survives a dispositive motion, such as a summary judgment motion." (quoting *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 1:20-CV-04767-MKV, 2023 WL 6122905, at *6 (S.D.N.Y. Sept. 18, 2023)))). And, where a plaintiff's claims have been addressed and ruled against on legal grounds in the context of a dispositive motion, the litigant cannot argue that they have been denied their day in court. *Cf. Benjamin v. Traffic Executive Ass'n E.R.R.*, 869 F.2d 107, 115 n.11 (2d Cir. 1989) ("Nor can we agree with an implication in plaintiffs' argument, namely, that they have not had their day in court on Counts II through IV. Plaintiffs' claims under those counts were ruled against . . . by the district court pursuant to a motion for summary judgment. Plaintiffs cannot attack summary judgment decisions as inimicable to the seventh amendment. . . . [W]here no issue of fact remains, summary judgment decides only questions of law and does not deprive the losing party of its jury trial right.").

As a result, if there are no contested factual issues that could change the outcome of this case, the Court must dismiss Ms. Alicea's Complaint, and in doing so, would not be abrogating Ms. Alicea's right to a trial by jury. *See In re Big Apple Volkswagen, LLC*, 2016 WL 1069303, at *8 ("The right to a jury trial is implicated only if the party survives a dispositive motion[.]").

    **A. Personal Involvement**

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct

participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).

Sergeant Smith argues that Ms. Alicea "has failed to plead a legally cognizable § 1983 claim against Sgt. Smith because she has failed to plead facts plausibly establishing his personal involvement in the alleged wrongdoing—and has in fact pleaded facts which preclude any allegation of his personal involvement." Mem. at 1.

The Court agrees, in part.

Ms. Alicea has alleged two separate violations of her Fourth Amendment rights: (1) a seizure in April 2023, arising from a dispute with her management company, and (2) a search arising from Sergeant Smith's presence in a parked police vehicle outside of her home.

    a. The Seizure

As to the alleged seizure, Ms. Alicea's Complaint does not state the name or identity of the officer(s) who allegedly intimidated her and caused her to leave her home. Ms. Alicea does allege that she filed a report regarding the incident, during which time she interacted with Sergeant Smith, *see* Compl. at 3, but the Complaint suggests that this report was filed subsequently at the police department, rather than in the Concierge complex, *id*.

Accordingly, because the Complaint does not allege that Sergeant Smith was present during or responsible for her alleged seizure, Ms. Alicea has failed to plead a legally cognizable § 1983 claim against Sergeant Smith arising from her alleged seizure.

    b. The Search

As to the alleged search, Sergeant Smith argues that Ms. Alicea has "plead[ed] herself out

of court," *see* Mem. at 7 (citing *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 474–75 (S.D.N.Y. 2009) (collecting cases)), because she has alleged that the police SUV parked outside her home had windows with "dark unseeable tints" and that she "couldn't see who it was[.]" *Id.* (quoting Compl. at 3–4). Accordingly, in his view, Ms. Alicea has pled facts that "affirmatively negate an essential element of her cause of action"—his presence in the SUV—and her Complaint therefore cannot withstand the *Iqbal*/*Twombly* plausibility standard. Mem. at 9 (citing *Iqbal*, 556 U.S. at 662 (2009); *see also Twombly*, 550 U.S. at 544 (2007)).

The Court disagrees.

Ms. Alicea's Complaint states repeatedly that Sergeant Smith was present in the SUV that parked outside of her house. *See, e.g.*, Compl. at 3, 4, 5, 7. Although her Complaint does state that the windows of the SUV had "dark unseeable tints" and that she "couldn't see who it was[,]" *see id.* at 3–4, such allegations alone are not sufficient to undermine her Complaint.

At this stage of the proceedings, the Court must accept all well-pleaded allegations as true. *York*, 286 F.3d at 125 ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."). Ms. Alicea has clearly alleged that Sergeant Smith was present in the SUV outside of her house. Her statements regarding the darkness of the windows and her inability to see inside of the windows do not necessarily render her claims implausible.

Whether Sergeant Smith was, in fact, outside of Ms. Alicea's home on the day in question is certainly a material fact which will eventually need to be proved if Ms. Alicea's claims are to proceed. But at this point, Ms. Alicea has met her burden by pleading that Sergeant Smith was present.

Accordingly, the Court will deny Sergeant Smith's motion to dismiss Ms. Alicea's claim

regarding the allegedly unconstitutional search based on lack of personal involvement.

### B. Actionable Constitutional Violation

"Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989) (quoting 42 U.S.C. § 1983); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (stating that Section 1983 "provides 'a method for vindicating federal rights elsewhere conferred,' including under the Constitution" (*quoting Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979))). "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983). Second, the plaintiff must show that "[t]he conduct at issue '[was] committed by a person acting under color of state law.'" *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

The Fourth Amendment generally protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Here, Ms. Alicea has alleged two violations of her Fourth Amendment rights, a seizure and a search. The relevant standards for each are described in the sections below.

#### a. The Seizure

"A Fourth Amendment seizure occurs 'when there is a governmental termination of freedom of movement through means intentionally applied.'" *Cox v. Village of Pleasantville*, 271 F. Supp. 3d 591, 603 (S.D.N.Y. 2017) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)). "Physical restraint or an assertion of authority to restrain a person's freedom of movement by law enforcement officers would, in most instances, constitute a seizure." *Pinto-Montoya v. Mukasey*, 540 F.3d 126, 132 (2d Cir. 2008). "In short, 'a person has been "seized"

within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Barlow v. Male Geneva Police Officer who Arrested me on Jan. 2005*, 434 F. App'x 22, 26 (2d Cir. 2011) (quoting *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Ms. Alicea has alleged few facts to support her contention that she was seized by police officers. She states that she felt unsafe after staff at her apartment complex "threatened to send police with their employees to force entrance" into her unit. Compl. at 3. Staff from the management office allegedly told her "that police would in fact allow staff to come into [her] apartment[.]" Pl. Opp'n at 2. Ms. Alicea allegedly left her home out of fear, which she considers a seizure. *Id.*

Ms. Alicea has not alleged any form of physical restraint or assertion of authority by police that restrained her freedom of movement. *See Pinto-Montoya*, 540 F.3d at 132. Although she has alleged that she felt compelled to leave her apartment because she feared that police and apartment staff might enter her unit, such movement does not constitute a seizure under the Fourth Amendment. *See Cox*, 271 F. Supp. 3d at 603 ("A Fourth Amendment seizure occurs 'when there is a governmental termination of freedom of movement through means intentionally applied.'").

Accordingly, Ms. Alicea has not alleged facts sufficient to support a cognizable claim for an unconstitutional seizure under the Fourth Amendment.

      b.  <u>The Search</u>

"When the Government obtains information by physically intruding on persons, houses, papers, or effects, a 'search' within the original meaning of the Fourth Amendment has undoubtedly occurred." *Fla. v. Jardines*, 569 U.S. 1, 5 (2013) (internal quotation marks omitted).

A search must be undertaken in order to obtain information or otherwise find something. "Trespass alone does not qualify [as a search], but . . . must be conjoined with . . . an attempt to find something or to obtain information." *U.S. v. Jones*, 565 U.S. 400, 408 n.5 (2012). In other words, "an actual trespass is neither necessary nor sufficient to establish a constitutional violation." *U.S. v. Karo*, 468 U.S. 705, 713 (1984).

Here, Ms. Alicea has not alleged that the police SUV parked outside of her home in an attempt to obtain information about her, nor has she alleged that any officers engaged in any type of investigatory activity or surveillance.

Accordingly, her allegations cannot support a cognizable claim for an unconstitutional search under the Fourth Amendment.[2]

### C. Qualified Immunity

Qualified immunity is intended to shield public officials from liability from civil damages when their actions were objectively reasonable in light of clearly established legal rules. *Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir. 2002). Courts must be careful to "evaluate the record from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and are required to "make allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving

---

[2] As noted by Sergeant Smith, even if the officer(s) in the SUV had been engaged in investigatory activity, it is likely that their conduct would not constitute a search under the Fourth Amendment because the Second Circuit has held that there is no reasonable expectation of privacy in common areas accessible to other tenants of multi-family residential complexes or buildings. *See U.S. v. Jones*, 893 F.3d 66, 72–73 (2d Cir. 2018) ("We hold that Jones had no legitimate expectation of privacy in the rear parking lot . . . . [T]he lot was not within the curtilage of Jones's home. The lot was a common area accessible to other tenants of 232 Westland Street and to tenants of a multi-family building next door, and therefore Jones could not reasonably expect that it should be treated as part of his private home."); *U.S. v. Fields*, 113 F.3d 313, 321 (2d Cir. 1997) (defendants had no legitimate expectation of privacy in a common area accessible to other tenants in the multi-family apartment building); *U.S. v. Holland*, 755 F.2d 253, 255 (2d Cir. 1985) (individual tenants in multi-tenant buildings have no legitimate privacy expectations in common areas, even when guarded by locked doors).

. . . ." *See Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 1993).

Courts perform a two-pronged inquiry when deciding questions of qualified immunity. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). The first prong addresses the threshold inquiry of whether the plaintiff has alleged a violation of federally protected rights. *Naumovski v. Norris*, 934 F.3d 200, 211 (2d Cir. 2019) (quoting *Kelsey v. Cty. of Schoharie*, 567 F.3d 54, 61 (2d Cir. 2009) (internal quotation marks omitted)). The second prong asks whether that right was clearly established at the time of the violation. *Tolan*, 572 U.S. at 655–56.

Because Ms. Alicea has not alleged a violation of a federally protected right, the Court need not reach the question of qualified immunity. As suggested by the analysis set forth above, Ms. Alicea has failed to identify a violation of any clearly established right.

Accordingly, even if her claim could have been plausibly pled, Sergeant Smith would be entitled to qualified immunity and her claim would have been dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 20th day of April, 2024.

*/s/ Victor A. Bolden*
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE